IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL LOWE,<br><br>    Plaintiff,<br><br>    vs.<br><br>WILLIAM J. MCGUINNESS, et al.,<br><br>    Defendants.<br>_____/ | Case No. 1:09-cv-00712 AWI JLT (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 50) |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants McGuinness, Call, and Rahimifar provided him inadequate medical care in violation of the Eighth Amendment. Now pending before the Court is Defendants McGuinness' and Call's motion for summary judgment.[1] (Doc. 50.) Plaintiff did not file an opposition to Defendants' motion. For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be **GRANTED**.

**I.    BACKGROUND**

   **A.    Factual Background**

Plaintiff's allegations against Defendants McGuinness and Call are as follows. On February 28, 2006, Defendant Rahimifar prescribed epidural shots to alleviate Plaintiff's back pain. (Doc. 1, Compl.,

---

[1] Defendant Rahimifar does not join the instant motion, however has filed a Motion to Dismiss which is currently pending before the Court. (Doc. 49.)

1

at 5.) However, Plaintiff was not provided the shots because, he contends, McGuinness, the Chief Medical Officer at Plaintiff's prison, failed to approve the treatment. (Id.)

On April 24, 2006, Plaintiff attempted to use the toilet, but suddenly felt a sharp pain in his lower back which caused him to fall to the ground. (Id. at 7.) Plaintiff contends that Defendant Call informed custodial staff to leave Plaintiff on the ground. (Id.) Thus, Plaintiff lay on the ground in pain and in his own bodily fluids until other custodial staff later transported him to the emergency room where he was given pain relief. (Id. 7-8.)

On November 21, 2006, Defendant Rahimifar observed a "displaced cage" and ordered Plaintiff to return for a corrective procedure. (Id. at 5.) Plaintiff asserts that, once again, Defendant McGuinness, refused to approve this follow-up procedure. (Id.) As a result, Plaintiff suffered severe pain and was left approximately 65% disabled. (Id. at 6.) According to Plaintiff, this was not the last time that Defendant McGuinness refused to approve a recommended course of treatment. On April 30, 2007, Plaintiff underwent another back surgery which was again performed by Rahimifar. (Id.) Upon discharge, Plaintiff was instructed to stay in bed for the next four months in order to recover from the surgery. (Id.) Defendant McGuinness failed to approve those instructions, causing Plaintiff to suffer further pain. (Id.) In addition, Defendant McGuinness failed to approve the post-surgery therapy that was also recommended for Plaintiff. (Id. at 7.)

In the instant motion, both McGuinness and Call assert that their actions regarding the above events not only fail to establish that they acted with deliberate indifference but reflect appropriate medical treatment. Responding to Plaintiff's allegation that he failed to approve Rahimifar's February 28, 2006 recommendation for the epidural, McGuinness states that he was not appointed as Chief Medical Officer for California State Prison, Corcoran until April 2006, at least one month after Defendant Rahimifar recommended the injections. (Doc. 51-8 at 2,4.) More importantly, McGuinness contends that his approval was never sought for Plaintiff's injections. (Id. at 3-4.) In addition, McGuinness states that he never personally treated Plaintiff nor was he ever presented with a request for services concerning any treatment recommended by Rahimifar. (Id. at 2-4.) McGuinness also states that following Plaintiff's appointment with Rahimifar in November of 2006, he was never presented with a request to approve a follow-up surgery and, as of December 28, 2006, the surgery had already been

2

approved and was pending. (Id. at 7)

With regards to Rahimifar's recommended four month bed rest following the April 2007 surgery, McGuinness states that he did not make any decision regarding whether Plaintiff would be afforded this accommodation. McGuinness also notes that rather than order Plaintiff's bed rest, the discharging doctor, Dr. Yokoyama, released Plaintiff to the general inmate population. (Doc. 51-8 at 9.) Additionally, McGuinness states that he approved every "physician request for services" for Plaintiff that was presented to him following Plaintiff's April 2007 surgery. (Id. at 12.)

For her part, Defendant Call states that though she was on duty in the emergency room at John D. Klarich Memorial Hospital (JDKMH) on April 24, 2006, at no point during her shift did she speak with LVN Felix, nor has she, at any time, ever instructed a nurse to leave an inmate that is unable to move, on the floor. (Doc. 51-9 at 2-3.) Instead, sometime before 8:00 a.m. on April 24, 2006, Call states that she responded to an alarm for an Emergency Response Vehicle and was transported to Plaintiff's housing unit where she found Plaintiff on floor, unable to move due to back spasms. (Id. at 3.) With the assistance of staff, Call placed cervical spine precautionary devices and a neck brace on Plaintiff and lifted him onto a gurney. (Id.) Then Plaintiff was transported to JDKMH's emergency room for further treatment. (Id.)

Though Plaintiff did not file an opposition to Defendants' motion, in his previous motion for summary judgment, Plaintiff argues that Rahimifar's February 28, 2006 discharge instructions support his claim that McGuinness failed to approve Rahimifar's declaration. (Doc. 28 at 1, 6.) Here, Plaintiff notes that the form includes a line provided for the "CMO's Signature," however the form was not signed by McGuinness. (Doc. 28 at 1, 6.) Plaintiff asserts that the absence of McGuinness' signature on the form proves that Defendant McGuinness deliberately failed to approve his medical treatment. (Id.) Plaintiff also argues that Defendant McGuinness had knowledge of Defendant Rahimifar's treatment recommendations because Defendant McGuinness was the Chief Medical Officer at the time Plaintiff entered a settlement agreement in Lowe v. CDCR (No. 04 C 0507), a state civil action filed by Plaintiff in Kings County Superior Court. (Id.)

As to Defendant Call, Plaintiff relies upon a Nurse Progress Note allegedly completed by LVN Felix, in an attempt to establish that Defendant Call was deliberately indifferent to his medical needs.

(Doc. 28 at 11, Doc. 46 at 28.)  While the note does not state Call's name directly, it does appear to indicate that the LVN contacted an emergency room nurse who had stated that if Plaintiff did not want to "get up," [from the floor], that he should be left on the floor.  (Id.)

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©.  A material fact is one which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor."  FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment.  Stefanchik, 559 F.3d at 929.  Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

for trial.'" Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

### III.    DISCUSSION

####    B.    Eighth Amendment – Inadequate Medical Care

To establish a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In other words, the plaintiff must show the existence of (1) a serious medical need and (2) a deliberately indifferent response by the defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

A medical need is serious "if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997). Indications that a person has a serious need for medical treatment include: the existence of an injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citations omitted).

A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need, thereby inflicting harm on the plaintiff. See Farmer v. Brennan, 511 U.S. 825, 837-42 (1994); Jett, 439 F.3d at 1096. Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment. See Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Nevertheless, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391

5

F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

In the instant matter, both Defendants McGuinness and Call argue that they are entitled to summary judgment on Plaintiff's inadequate medical care claims because there is no evidence demonstrating that they acted with deliberate indifference. (Doc. 50–1 at 18–24.) The Court agrees as the undisputed evidence demonstrates that Plaintiff was not harmed by the actions, or inaction of either Defendant.

### 1.    **Defendant McGuinness**

Regarding Plaintiff's claim that McGuinness failed to approve Rahimifar's February 28, 2006 recommendation for epidural shots, Defendant McGuinness has provided evidence, unchallenged by Plaintiff, that demonstrates that he was unaware of the recommendation at the time that it was made. According to McGuinness' declaration he was not appointed to his position as the CMO until April 2006, over a month after Rahimifar made the recommendation. (Doc. 51-8 at 2, 4.) Further, McGuinness states he was not aware of the recommendation until July 2006, following his review of Plaintiff's medical file in response to an inmate appeal filed by Plaintiff. (Id. at 4.) By this time, Plaintiff had received a subsequent surgery, which rendered Rahimifar's previous recommendation obsolete. (Id. at 6.)

Plaintiff's sole argument in response to McGuinness' sworn declaration, is the absence of McGuinness' signature on Rahimifar's February 28, 2006 discharge instructions. However, even when considering the evidence in a light most favorable to the non-moving party, this document fails to rebut Defendant's assertion that the form was not signed by McGuinness because he never received it.

Regarding Plaintiff's allegation that McGuinness failed to approve a recommendation for surgery made by Rahimifar in November 2006, Defendant's declaration also states that he was never provided this request. (Doc. 51-8 at 7-8.) In fact, according to Defendant's documents, on December 28, 2006, Plaintiff was seen by Nurse Practitioner Wilson, who requested an update regarding the scheduling of Rahimifar's recommended surgery, with a "progress note" form, which according to McGuinness, indicates that the surgery had already been approved. (Doc. 51-3 at 13, Doc. 51-8 at 7.) Here, Plaintiff

provides no evidence rebutting this evidence.[2]

As to Rahimifar's recommendation that Plaintiff receive four months of bed rest, McGuinness' declaration admits that Rahimifar's surgery report suggested bed rest following the surgery. However, McGuinness indicates that Dr. Yokoyama, not Rahimifar, was responsible for Plaintiff's discharge orders following his surgery. (Doc. 51-8 at 8.) Defendant points out that Dr. Yokoyama's instructions indicated that because Plaintiff was recovering from the surgery better than anticipated, Dr. Yokoyama decided to release Plaintiff to the general inmate population and not confine him to bed rest. (Doc. 51-8 at 8-9, Doc. 51-3 at 42.) Additionally, McGuinness' declaration, again unchallenged by Plaintiff, states that he did not make any decision regarding Plaintiff's post-operative care following Plaintiff's April 2007 surgery. (Doc. 51-8 at 9.) Moreover, according to Plaintiff's deposition testimony, Plaintiff admitted that he had never spoken directly with Dr. McGuinness and that Dr. McGuinness never told him that he was not going to approve any "follow-up" treatment recommendations by any doctors. (Doc. 51-7 at 16.)

Finally, Defendant's evidence demonstrates the extensive and varied treatment Plaintiff received, many of which were specifically authorized by McGuinness. For example, from May 2, 2007 to December 2007, Plaintiff's medical treatment included pain medications, multiple visits with doctors and nurses, access to the emergency room, medical appliances, nerve conduction studies, MRIs, subsequent surgery on December 27, 2007, and an individual assigned to Plaintiff to assist him with various aspects of daily living while in the prison. (Doc. 51-8 at 10-12, Doc. 51-4 at 29, 41-43, Doc. 51-5 at 9-12, 16, 17, 19-20, Doc. 51-6 at 4-5.)

Defendant McGuinness has met his burden to demonstrate that there is not a genuine dispute of material fact as to whether McGuinness failed to approve any of the treatment recommended by Rahimifar. Instead, the uncontested evidence before the Court demonstrates that Plaintiff's allegations

---

[2] Further, after Plaintiff was seen by Wilson, McGuinness, approved a "Comprehensive Accommodation Chrono" for Plaintiff, which provided Plaintiff with soft and hard back braces, a lower bunk, a lower cell, a walker, a wheel chair, an egg crate mattress and pillow, and a caretaker to assist him with meals and other activities in the prison. (Doc. 51-8 at 7, Doc. 51-3 at 12.) Rather than suggest deliberate indifference by McGuinness, the document demonstrates McGuinness and Wilson had assessed Plaintiff's back condition and intended to provide for Plaintiff's medical needs.

7

in this regard are unsupported and that Plaintiff received appropriate medical care.[3] Accordingly, the Court concludes that Defendant McGuinness' motion for summary judgment should be **GRANTED**.

### 2.  Defendant Call

As to Defendant Call, as noted above, Plaintiff relies solely on a Nurse Progress Note appears to have been authored by LVN Felix, to establish that Defendant Call was deliberately indifferent to his medical needs. The Nurse Progress Note provides, in relevant part:

> [Plaintiff] on floor again; per [Plaintiff's] celly, [Plaintiff] got up to urinate and fell again. [Plaintiff] not responding verbally. [Plaintiff's] body twitching. Called ER again ER RN stated to call yard dr. Called yard no dr. or nurse available. Called ER RN again told her no dr. RN stated "per dr. Reynolds" this is not a ER issue to wait for yard staff. I asked what to do [with Plaintiff] because lying on the floor. Per RN if he doesn't want to get up leave him there. Gave info to custody, custody seargant [sic] called ERV. [Plaintiff] then taken to ER. – MfelixLVN.

(Doc. 28 at 11, Doc. 46 at 28.) Plaintiff argues that the Nurse Progress Note proves that Defendant Call responded to Plaintiff's medical needs by instructing staff to simply ignore him.

However, in the instant motion, Defendant Call asserts that on April 24, 2006, she did not speak with LVN Felix on the telephone regarding Plaintiff. (Doc. 51-9 at 2.) Defendant Call maintains that at no point did she ever advise a nurse to leave Plaintiff on the floor, wet with his own urine. (Id. at 3.) From what Defendant Call is able to recall, she responded to the alarm alerting officials that Plaintiff was in need of emergency attention by arriving personally at Plaintiff's housing unit. (Id.) Defendant Call then escorted Plaintiff to the emergency room shortly thereafter. (Id.)

As Plaintiff's sole evidence, the "progress note," fails to name or specifically refer to Defendant Call, Plaintiff has failed to adequately rebut Defendant's declaration that she did not provide the alleged instructions. However, even presuming that Defendant Call instructed prison officials to leave Plaintiff on the floor of his cell, the Court additionally finds that Call's conduct does not reflect deliberate indifference.

---

[3] In addition, Plaintiff's reliance on the settlement agreement to establish deliberate indifference is also misplaced as it appears that Defendant McGuinness was not the Chief Medical Officer at the time of the settlement agreement, which was reached sometime in January 2006. (Doc. 47, Ex. 2.) As indicated above, McGuinness was appointed as Chief Medical Officer for California State Prison, Corcoran in April 2006. (Doc. 51 at 2,4.) In addition, McGuinness was not a party to the case in which the settlement agreement was reached. Nor has Plaintiff offered any evidence that McGuinness was responsible for implementing the agreement or that he was in any way aware of the agreement. Accordingly, the existence of the 2006 settlement agreement has no bearing on this case.

8

Delays in providing medical treatment to prisoners may manifest deliberate indifference, Estelle, 429 U.S. at 104-05, but where the claim of deliberate indifference stems from such a delay, a plaintiff must show the delay led to further injury. McGuckin, 974 F.2d at 1060; Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). "The mere existence of delay, without more, is therefore insufficient to establish a claim under the Eighth Amendment." Scott v. Keller, 2010 U.S. Dist. LEXIS 95738, at *11 (E.D. Cal. Sept. 13, 2010); accord Rowland v. Keller, 27 F. App'x 816, 817 (9th Cir. 2001) (45-minute delay in treatment did not amount to deliberate indifference because plaintiff did not present any medical evidence showing delay caused further injury, even though he fainted); Burns v. Sumner, 993 F.2d 882 (9th Cir. 1993) (allegations plaintiff suffered unnecessary pain as result of three-year delay in carpal tunnel surgery insufficient to state Eighth Amendment violation by itself); Hunt v. Dental Dept., 865 F.2d 198, 201 (9th Cir. 1989) (three-month delay in dental treatment is sufficient to constitute deliberate indifference where teeth were breaking off, gums were bleeding, infection occurred, and plaintiff lost weight due to inability to eat).

According to Nurse Progress Note, allegedly completed by LVN Felix, the time recorded on the document indicates that Plaintiff's fall to the floor occurred at approximately 07:10 a.m.[4] (Doc. 28 at 11, Doc. 46 at 28.) In her declaration, Defendant's Call states that shortly before 8:00 a.m., she responded to the alarm for the Emergency Response Vehicle, and, at approximately 8:00 a.m., Call returned to the emergency room with Plaintiff for further treatment. (Doc. 51-9 at 3.) Thus, according to the record, Plaintiff was left on the floor and incurred a delay in treatment of approximately 50 minutes. However, according to Defendant McGuinness' declaration, not only did Plaintiff not incur further injury as a result of being left on the floor but McGuinness opines that, on April 24, 2006, Call provided appropriate medical treatment to Plaintiff. (Doc. 51-8 at 12-13.) The Court notes that Plaintiff has failed to provide any evidence with which to oppose any of McGuinness' statements in this regard. Further Plaintiff has failed to provide any evidence to demonstrate he incurred harm as a result of any delay allegedly caused by Defendant Call.

In light of these considerations, Defendant Call has met her burden to demonstrate that there is

---

[4] The Court notes that the Nurse Progress Note reflects a date of June 24, 2006, however as Plaintiff himself explained during his deposition, this form was incorrectly dated. (Doc. 51-7 at 10-11.) According to both Plaintiff and Defendant Call, the fall which led to incident in question occurred on April 24, 2006. (Doc. 51-7 at 10-11, Doc. 51-9 at 3.)

1  no triable issue of fact and that liability cannot be imposed.  Accordingly, the Court recommends that
2  Defendant Call's motion for summary judgment be **GRANTED**.

### IV.   CONCLUSION

For the reasons set forth above, it is **HEREBY RECOMMENDED** that Defendants May 6, 2011 motion for summary judgment against Defendants McGuinness and Call (Doc. 50) be **GRANTED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these findings and recommendations, any party may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be filed and served within **fourteen (14) days** of the date of service of the objections.  The parties are forewarned that the Court does not intend to grant extensions of time for this purpose absent a clear showing of good cause.  The parties are also advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 3, 2012**                                    /s/ Jennifer L. Thurston
                                                                                    UNITED STATES MAGISTRATE JUDGE